**Lee Ed ALTUM et ux., et al., Appellants,**

**v.**

**James R. BOOTH et ux., Appellees.**

**No. 11361.**

Court of Civil Appeals of Texas.

Austin.

Feb. 16, 1966.

Cox & Dulany, George B. Dulany, Belton, for appellants.

Brown, Daniel & Brown, John B. Daniel, Jr., Temple, for appellees.

HUGHES, Justice.

This suit is by Lee Ed Altum and wife Darlene Altum and H. E. Altum as next friend of the minors, Tanya and Shelia Altum, appellants, against James R. Booth and wife, Linda Kay Booth, appellees, to recover property damage and damages for personal injuries alleged to have resulted from a collision between a 1959 four-door Buick automobile driven by appellant Darlene Altum and a 1964 yellow convertible Chevrolet being driven by appellee, Linda Kay Booth, such collision occurring at the intersection of West 10th Street and North Main Street (Highway 317) in the City of Belton, Bell County, Texas, about 11:40 a. m. January 7, 1964.

Appellees filed a cross action for damages to their automobile.

Trial was to a jury, but when all parties had rested the court instructed a verdict against appellants, whereupon, appellees dismissed their cross action. Judgment was entered accordingly.

Appellants have seven points, the first four of which, jointly briefed, complain of the court's action in directing a verdict. The basis of these points is that there was evidence of Mrs. Booth's negligence sufficient to submit to the jury. We are of the opinion that there is no evidence of negligence on the part of Mrs. Booth and that the instructed verdict was proper.

The collision occurred at an uncontrolled intersection. The day was bright and clear. The view of each driver was unobstructed for reasonable distances. No unusual conditions of traffic or roads were present, and no evidence that either automobile was not in good running order.

Mrs. Booth was driving east on 10th Street. Mrs. Altum was driving north on Main Street. The point of impact was in southeast corner of the intersection. The right front of the Altum car sustained most of the damage done to it. The Booth car was damaged only on the right rear quarter panel and the trunk lid.

There is no evidence that either car was driving at an excessive rate of speed, thirty miles being the highest estimate given. Mrs. Altum testified that the Booth car when she first saw it was going twenty-five or thirty miles an hour, "but slowing."

There is no evidence that either driver gave any signal or applied the brakes prior to the collision.

The evidence is undisputed that the Booth car entered the intersection first.

Appellants alleged that Mrs. Booth was negligent in (1) failing to maintain a proper lookout (2) failing to timely apply her brakes (3) failing to keep her car under proper control (4) failing to yield the right of way to Mrs. Altum (5) operating her car at an excessive or imprudent speed, and (6) in another manner which will be discussed later.

With respect to the failure of Mrs. Booth to keep a proper lookout we will quote from the record the principal relevant evidence.

The only two witnesses on this issue were the drivers of the cars. Mrs. Altum testified:

"Q   Mrs. Altum, can you tell us when you first saw that Chevrolet and where you were when you first saw it?

A   I was about 50 feet back down east, yeah, back down from 317 and 10th intersection.

*       *       *       *       *       *

Q   Now Mrs. Altum, with reference to the way this accident happened I understood you to say, and please correct me if I am wrong because during that time I couldn't hear you too well, I understood you to say that it was your car that was about 50 feet back south of the intersection when you first saw the Booth car, is that what you said?

A   I said about that or about two and a half car lengths.

*       *       *       *       *       *

Q   Now where was the Booth car at that time, I didn't understand you to testify where it was.

A   She was approaching the intersection.

*       *       *       *       *       *

Q   Where was she, I am not trying to testify for you?

A   She was—well, I am not very good at these feet or anything but she looked to be about 25 or 30 feet back, I am not sure.

Q   In other words she was about half as far from the intersection as you were?

A   It appeared to be yes.

\* \* \* \* \* \*

Q What did you do, if anything, after seeing that automobile?

A Well, I saw it. I looked and saw it and I proceeded on and I looked back up the road you know and when I saw it she appeared to be stopping.

\* \* \* \* \* \*

Q Did you continue to watch the yellow convertible?

A Yes, I didn't keep my eye on it all of the time, I looked back up the road.

Q By back up the road you mean you looked north up 317?

A Yes.

Q Did you again see that yellow convertible prior to the collision?

A Yes.

Q And where was it then?

A You mean right before the collision happened?

Q Yes..

A Well, it was at the intersection of 317 and 10th and as I saw her and she just zoomed out in front of me.

Q Zoomed out in front of you?

A Yes."

Mrs. Booth testified:

"Q Now Mrs. Booth as you approached that intersection I want you to describe to me in your own words as best that you can about where you were in your car when you first saw the Buick automobile that we now know to be the Altum car, can you just describe that for me as best you can?

A I was approximately from 5 to 10 feet from the intersection when I first saw the red Buick. It was on my right.

\* \* \* \* \* \*

Q At about what distance from the intersection was the Altum car or the Buick when you first saw it?

A Approximately 8 or 9 car lengths figuring a car at 17 feet would make it right around 150 feet.

\* \* \* \* \* \*

Q All right now as you approached this intersection did you look not only to your right and see the Altum car approximately 150 feet south but state whether or not you also looked back to your left or what would be southbound traffic on Highway 317?

A I did look.

Q Can you tell us please whether or not there was any traffic on 317 that made any material difference in this conflict?

A There was no traffic at all.

\* \* \* \* \* \*

Q What then did you do, did you slow your car down or did you proceed on into the intersection or what?

A I looked at the red car and estimated its speed, I looked to my left and there was no traffic, I looked to my right again to check on the red car, it was still there, it was still moving. It seemed to slow because the nose of the vehicle dipped slightly.

\* \* \* \* \* \*

Q One time when your car—the first time you saw it your car was 4 or 5 feet back west of the intersection and the Altum Buick was approximately 150 feet south?

A Yes, sir.

Q You then looked to the left and then looked back to the right and saw the Altum car again. Had it closed its range to you or what?

A It had closed its range to approximately 5 or 6 car lengths.

Q To 5 or 6 car lengths. And where was your car at that moment that you say the Altum car the second time?

A Perhaps two feet from the intersection, very close to it.

\* \* \* \* \* \*

Q What did you then do after seeing the Altum car for the second time some 5 or 6 car lengths back from the intersection with reference to proceeding across the intersection?

A I made the decision that I just discussed and I proceeded across the intersection.

Q When was the next time, if ever, that you saw the Altum car?

A A split second before the impact."

The decision "just discussed" by Mrs. Booth was with reference to a yellow "ice on bridge sign" which was located, not on the street Mrs. Booth was traveling, but on Main Street on which Mrs. Altum was driving. It was on the right, or east, side of the street and about 25 feet from the intersection where the collision occurred.

Regarding this sign Mrs. Booth testified:

"Q Can you tell us please what observation, if any, you made of that ice on bridge sign as you were approaching this intersection, just tell us in your own words what happened, what occurred to you?

A At the angle that I was looking at it from—

Q A little louder please Mrs. Booth.

A I am sorry. At the angle from which I was looking at it I could

tell it was a yellow triangle sign. I could not see whether there was printing on it or if there had been what it said."

Mrs. Booth after testifying that the Altum car appeared to be slowing, testified:

"A And I wondered why and I saw the sign again and it registered and I understood it to be a yield right of way sign and this explained the action to me and I went across."

Appellants alleged that Mrs. Booth was negligent in failing to recognize that the "ice on bridge" sign was not a "yield right of way" sign.

Mrs. Booth undoubtedly relied on what she believed to be a sign giving her the right of way. This is wholly immaterial, in our opinion, for the reason that Mrs. Booth, under the undisputed evidence and the law, had the right of way regardless of how she may have thought she obtained it. She had the right of way because she entered the intersection first. Art. 6701d, Sec. 71 (a), Vernon's Ann.Tex.Civ.St. She was about three fourths of the way through the intersection when she was struck. It was Mrs. Altum who failed to yield the right of way, not Mrs. Booth.

■ There simply is no evidence that Mrs. Booth was negligent in any material respect. She operated her automobile prudently and in accordance with her rights. A motorist may rely, and must rely in order not to create traffic confusion, on the right of way given him by law. This does not mean, of course, that a motorist having the right of way may, recklessly and in disregard of those who have failed to yield the right of way, cause a collision which he by the exercise of ordinary prudence could have prevented. There is no evidence that Mrs. Booth acted in a careless, reckless or imprudent manner in exercising her lawful right of way.

**840**

Point five complains of the refusal of the trial court to admit evidence of the "custom and habit" for installing "ice on bridge" signs in the Belton area, the purpose of this proffered evidence being to show that Mrs. Booth as a reasonably prudent person should not have mistaken this sign for a "yield" sign.

We have held that it was immaterial that Mrs. Booth may have thought she had the right of way for the wrong reason. If this is correct, then it is unnecessary for us to determine this point. It would not be reversible error to exclude evidence relating to an immaterial issue.

Appellants' sixth and seventh points, jointly briefed, are that (1) the testimony of the witness Cox was given in answer to leading questions (2) the witness Cox was not the witness of appellants and appellees should not have been permitted to say before the jury that she was their witness.

The witness Marvin W. Cox testified, in answer to leading questions, that the Booth car was "over halfway through" the intersection when the collision occurred and that the Altum car hit the Booth car in the "right rear corner."

In the course of the objections made to these questions, attorney for appellees stated in the presence of the jury that the witness was appellants.

The witness Cox testified by deposition and a portion of his deposition had been introduced by appellants before the matters above referred to occurred.

Without the testimony of Mr. Cox, the evidence is uncontradicted from other sources as to each of the matters about which he was interrogated. The error, if any, in the premises was harmless under Rule 434, Texas Rules of Civil Procedure.

The judgment of the trial court is affirmed.

Affirmed.